Brady, J.
This appeal has occasioned many examinations of many questions involving the effect of the trust deed upon the power conferred by it in regard to the statute against perpetuities, the legality of the instrument by which the power was exercised, and indeed those so ably presented by the numerous briefs submitted for consideration, and elaborately and ably answered, by which it was contended, that in the exercise of the power Mrs. Murray had transcended her privileges and violated the statute by suspending the power of alienation beyond the period allowed in that respect. The effect, also, of the statutes of 1848 and 1849, in regard to the property of married women, received the attention, it was thought, they demanded, although the result of their consideration was that they did not strictly apply effectively in the solution of any of the many legal problems supposed to be involved herein.
The study of the case has not been without labor and misgivings, requiring, therefore, frequent reconsiderations with a view to more assured conclusions.
The ultimate result at length determined, however, and after consultation, is that the exercise of the power by Mrs. Murray cannot be successfully assailed, and therefore there has been no illegal suspension of the power of alienation.
Upon the death of Mrs. Murray there can be no doubt the trust under the original deed ceased.
If she failed to execute the power conferred upon her by it, the trust estate passed to her children or to her heirs at *393 law in fee simple. If she legally exercised the power the trust terminated. The will, therefore, becomes the only subject of serious consideration. The examination of it discloses clearly, it is thought, that it created no trust and no future interest of any kind, aside from the power of sale conferred upon her executor.
Mrs. Murray refers in it to the deed of trust, and by virtue thereof and the execution of the power conferred thereby, devises, directs, limits and appoints, with regard to the estate in question, as follows :
“ First. It is my will that the said premises in the said deed, granted and conveyed as aforesaid shall he held and enjoyed by my husband, the said James B. Murray, and my daughters, Caroline, Agnes and Anna, so long as any two of my said daughters shall remain single and unmarried, and for the space of one year after the marriage of the daughter who shall be married second in the order of time, and I do hereby authorize and empower my executor and trustee hereinafter named at any time after the expiration of t. e said year last mentioned, with the consent of my husband, if he shall be living, to sell the said premises at public or private sale, on such terms and for such price as he may deem expedient, and upon such sale to create all necessary or proper deeds and conveyances lo the purchaser or purchasers thereof, which sale and conveyance shall be a complete bar to all claims to the estate or interest in the said premises of my children and heirs, or any person claiming by or through them. And I do direct that the proceeds of the said sale, after deducting the expenses thereof, be divided among all my children who may then be living, and the issue of any of them who may be dead, in equal shares, the issue of any deceased child to take the share of his, her or their parent.”
And these provisions it is also thought create a valid present estate in possession with a conditional limitation in her husband and daughters, but a reversionary interest in fee in her children and their issue. If the fee does not vest in the daughters it is not disposed of, as no one else is gifted with it, the executor taking only a naked power of sale. All the expressions necessary to create the fee are employed as well as those necessary to establish the limitation designed and to which the fee could be legally and properly subjected.
The vesting of the fee in the children of Mrs. Murray was indeed contemplated and provided for in the deed of trust as we have seen in case she died without exercising the power conferred upon her, and her will carries out the scheme by its provisions. This phase of that instrument is material and conclusive it would seem, for the reason that under our statute on the subject, there is no suspension of the power of alienation when there are persons in being who can convey an absolute title in possession.
If, for example, Mr. Murray having died, the daughters united in a conveyance, the fee would be absolutely conveyed, inasmuch as this would be a concurrence of all persons having absolute interests in the estate and the only-persons having such interests.
*394 This view becomes the more apparent and impressive when we keep in mind that there is no trust created by the will, and indeed that there is no trust existing which in any way affects the estate. It does matter, therefore, perhaps what the estate or interest conferred by the will may be designated as the whole fee has passed and the limitations may be surrendered or waived or abandoned or transferred by a concurrence of the parties interested. And on this subject it should also be borne in mind that there is not a contingent remainder.
The revisers said in reference to future estates: To prevent a possible difficulty in the mind of those to whom the subject is not familiar, we may add that an estate is never inalienable unless there is a contingent remainder, and the contingency has not yet occurred. ”
‘ ‘ This is the meaning of the rule of law prohibiting perpetuities and is the effect of the definition in section 14.” Reviser’s notes, 3 R. S. (2d ed.), 573.
The power of sale does not affect this view. It is a naked power to be exercised only upon the expiration of one year after the two marriages contemplated by the will, a contingency which may never happen, and then, only with the consent of Mr. Murray, if he should be living.
It is clearly a naked power, for there is no devise to the executor or trustee, as already suggested, but an authority, a power and nothing more.
It is not a trust power, and is not only not imperative, but its exercise is dependent upon conditions. The direction to distribute after the sale takes place embraces all that is in the nature of a command. Such an authority cannot, it would seem, suspend the power of alienation. Blanchard v. Blanchard, 4 Hun, 287; aff’d 70 N. Y., 615; Eells v. Lynch, 8 Bosworth, pp. 479, 480; 1 R. S., 737, § 128. If, however, it be invalid as suspending the power of alienation, this would not affect the vested estates in the children, and the result must be the same, namely, the validity of the disposition made by the will.
In addition to this, it may be said that the union of the executor and trustee with the daughters in a conveyance, if by any interpretation that should be deemed necessary, would overcome any possible objection on that score. It is not deemed necessary to extend this discussion beyond what is stated.' The suggestions made are deemed controlling and conclusive, and however interesting or profitable it might be to examine the various elements, which have been presented in the briefs, it would serve more to confuse than to elucidate the result which has been adapted after much investigation and reflection.
The tendency has been to elaborate expression on ques *395 tions relating to wills, and it may be said, particularly those involving the statute against perpetuities, and it not unfrequently happens that some line of thought, not fully, perfectly understood by the reader, leads to ingenious, if not to false theories, which promote litigation. It is said by Gray, in his treatise on the “Buie against Perpetuities” that since the Bevised Statutes, there were in this state 170 reported cases on the subject of remoteness (sections 749, 750), and that in no civilized country, is the making of a will so delicate an operation as here This may be, and doubtless is susceptible of explanation, but the ingenuity and learning of our bar resting upon adjudications upon the subject of every shade in delicacy of manipulation and construction, make contentions natural and easy.
For the reasons assigned, however, the judgment appealed from should be reversed, with costs.
Daniels, J.,